**UNITED STATES of America**

v.

**Garvey Martin CHEEK, Jr.**

**No. ST–CR–84–15.**

United States District Court, W.D. North Carolina, Statesville Division.

Jan. 5, 1987.

Max O. Cogburn, Jr., Chief Asst. U.S. Atty., Asheville, N.C., for plaintiff.

David S. Rudolf and Thomas K. Maher, Durham, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion for reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

This Court held a hearing in Charlotte, North Carolina on December 15, 1986 at which the Defendant was represented by Thomas K. Maher and David S. Rudolf, Attorneys at Law. The Government was represented by Max O. Cogburn, Jr., Chief Assistant United States Attorney for the Western District of North Carolina.

The Defendant presented as witnesses family members and citizens of the community in which the Defendant resided.

The Defendant also filed on October 14, 1986 an extensive Memorandum in Support of Motion to Reduce Sentence, and orally argued for reduction of Defendant's sentence.

The Court has considered the arguments presented in Defendant's Memorandum, and oral argument by Defendant's counsel.

The Defendant argues that a reconsideration of the sentence in this case is appropriate because

(a) Information was not presented to the Court of sentences imposed across the country on other defendants convicted of continuing criminal enterprises.

The Defendant presents for the Court's consideration several cases which the Defendant contends involve much more egregious conduct than that engaged in by this Defendant, and for which those defendants received a lesser sentence than this Defendant received.

This Court has repeatedly stated its position as to sentencing of those defendants who engage in drug activity in this judicial district. The Court will state it once again.

The purpose of sentencing includes rehabilitation, punishment, and deterrence of crime.

Deterrence of controlled substance crimes is this Court's primary purpose for imposing a significant prison term which in those cases is longer than the prison term imposed in other jurisdictions for similar offenses. This Court was not present at the proceedings which resulted in the sentences imposed by the courts in the cases referred to by the Defendant, but many of those cases would appear to this Court to warrant more lengthy sentences than those given.

This Court has a duty to impose such a sentence on controlled substance purveyors in the Western District of North Carolina who are caught and convicted, that it will be many years before they are free to enjoy the fruits of their activity, and a sentence which will convey the message to anyone who is contemplating such activity

in this District that they will face a substantial period of incarceration for violation of controlled substance statutes.

Drug dealers have no concern for the minds or lives of those who become victims of their greed, and therefore this Court feels they should be removed from society and incarcerated for a period of time commensurate to their heinous crime.

Unlawful distribution of controlled substances leads to many crimes which come before this Court. Defendants in this Court every criminal term state that their criminal activity was for the purpose of obtaining funds to supply their drug habit. Distribution of controlled substances results in corruption of political leaders, law enforcement officials, and yes, the judiciary. This Government and the fabric of our society will be decimated if drugs continue to flow into the country at the present rate. If the Government cannot stop the drugs before they enter the country, then the only remaining solution is the enforcement of statutes prohibiting the illegal distribution of controlled substances and lengthy prison terms for those caught and convicted of violating those statutes, at least in the Western District of North Carolina.

There is some evidence that significant sentences by this Court in drug related cases are apparently having a deterrent effect on those who would bring drugs into this District with the intention of distribution. The Court is of the opinion that if lengthy sentences were imposed nationwide for those who are willing to wreck our society that it would at least diminish, if not eliminate, the availability of drugs because of the cost of extensive prison terms to distributors would outweigh any profit they may receive.

Lengthy sentences for this dastardly crime is the only resource available to this Court in the war against distribution of controlled substances.

(b) The Defendant argues that until his involvement in this enterprise, he was an exemplary citizen.

Of course, prior conduct does weigh in the sentencing of a defendant. If the record of the defendant indicates that he was engaged in a life of crime, then this Court may consider that as an indication that leniency would not be appropriate because there is a good chance that the Defendant would revert to the same conduct when released from imprisonment. However, lack of a prior record does not diminish the enormity of the damage inflicted on the controlled substance users whose habit the Defendant helped to feed as well as the damage to first time users to whom the Defendant's activity made the drugs available. Friends, relatives, and others who know the Defendant are usually able and willing to put aside their concern about a crime if they feel their testimony may help the Defendant to return to their family and to the community. But, this prior friendship and any good works by the Defendant is far outweighed by the harm done to society by a major drug distributor's activity.

(c) The Defendant argues that his involvement in the enterprise resulted principally from his own addiction to drugs.

Bank robbers often plead the same defense when it comes to sentencing. Their excuse is in so many words, "the devil drug made me do it." Accepting drugs and using drugs for the first time and all succeeding times is a voluntary act.

The Defendant's Memorandum states:
Martin's addiction totally destroyed his priorities, and led him to simply walk away from his wife, family and everything else he cared about.

Well, the names Bob, Jim, Alex, Jane, Mary, and a host of other names could be substituted for "Martin." They are the victims of "Martin's" greed, and his willingness to destroy the minds, bodies, and hopes of anyone who acquired the drugs that "Martin's" activities made available to them. "Martin" profited from the destruction of those lives and now he wants to blame the devil drug which he was willing to distribute to others for his profit.

(d) The Defendant argues that a reduction to a sentence of thirty years, without parole, is appropriate.

Thirty years without parole is appoximately twenty years whenever good time is considered. See Title 18 U.S.C. § 4161. Twenty years would not be a significant deterrent to anyone who contemplates engaging in distribution of drugs in the Western District, and collecting the enormous profits from their crime.

Considering the nature of this crime, the unknown damage to adults and children who will never be known to this Court or to the Defendant, the Court feels that the Defendant's sentence is appropriate and it will not be disturbed.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion to reduce sentence is DENIED.